UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

| | | |
|---|---|---|
| DONALD GLEN LANEY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 2:25-CV-17-CEA-JEM |
| | ) | |
| COMMISSIONER OF SOCIAL SECURITY, | ) | |
| | ) | |
| Defendant. | ) | |

**REPORT AND RECOMMENDATION**

This case is before the undersigned pursuant to 28 U.S.C. § 636(b) and Rule 73 of the Federal Rules of Civil Procedure. Now before the Court is Plaintiff's Brief in Support of Reversal of the Decision of the Social Security Administration [Doc. 14]. Donald Glen Laney ("Plaintiff") seeks judicial review of the decision of the Administrative Law Judge ("ALJ"), the final decision of the Commissioner of Social Security ("Commissioner") denying him disability insurance benefits. For the reasons set forth below, the undersigned **RECOMMENDS** that Plaintiff's request for remand [**Doc. 14**] be **DENIED** and that the Commissioner's Motion for Summary Judgment [**Doc. 16**] be **GRANTED**.

I.     **PROCEDURAL HISTORY**

On January 13, 2021, Plaintiff filed for Disability Insurance Benefits and Supplemental Security Income [Tr. 144–50] pursuant to Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401 *et seq*. Plaintiff claimed a period of disability that began on December 23, 2020 [*Id.* at 17]. After his claims were denied initially [*id.* at 59–67] and upon reconsideration [*id.* at 68–80], Plaintiff requested a hearing before an ALJ [*id.* at 96–116]. A hearing was held on September 6, 2023, before ALJ Benjamin Burton (hereinafter "the ALJ") at which Plaintiff testified as well as

a Vocational Expert ("VE"), Donna Bardsley testified [*Id.* at 36–58]. On November 21, 2023, ALJ Burton found Plaintiff not disabled [*Id.* at 17–29]. Plaintiff asked the Appeals Counsel to review the ALJ's decision [*Id.* at 141–43]. The Appeals Council denied Plaintiff's request for review [*id.* at 1–6], making the ALJ's decision the final decision of the Commissioner.

Having exhausted his administrative remedies, Plaintiff filed a Complaint with this Court on January 16, 2025, seeking judicial review of the Commissioner's final decision under 42 U.S.C. § 405(g) [Doc. 1]. Plaintiff filed his brief [Doc. 14]. Defendant filed a motion for summary judgment [Doc. 16]. This issue is now ripe for review.

## II. DISABILITY ELIGIBILITY AND ALJ FINDINGS

"Disability" means an individual cannot "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). An individual will only be considered disabled:

> if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

*Id.* §§ 423(d)(2)(A), 1382c(a)(3)(B).

Disability is evaluated pursuant to a five-step analysis summarized as follows:

1. If claimant is doing substantial gainful activity, he is not disabled.

2. If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.

3. If claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.

4. If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.

5. Even if claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that accommodates his residual functional capacity ("RFC") and vocational factors (age, education, skills, etc.), he is not disabled.

*Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997) (citing 20 C.F.R. § 404.1520).

A claimant's residual functional capacity ("RFC") is assessed between steps three and four and is "based on all the relevant medical and other evidence in [the claimant's] case record." 20 C.F.R. §§ 404.1520(a)(4), 404.1520(e), 416.920(a)(4), 416.920(e). RFC is the most a claimant can do despite his limitations. *Id.* §§ 404.1545(a)(1), 416.945(a)(1).

The claimant bears the burden of proof at the first four steps. *Walters*, 127 F.3d at 529. The burden shifts to the Commissioner at step five. *Id.* At the fifth step, the Commissioner must prove that there is work available in the national economy that the claimant could perform. *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999) (citing *Bowen v. Yuckert*, 482 U.S. 137, 146 (1987)).

Here, the ALJ made the following findings:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2025.

2. The claimant has not engaged in substantial gainful activity since December 23, 2025, the alleged onset date (20 CFR 404.1571 *et seq.*).

3. Since the alleged onset date of disability, December 23, 2020, the claimant has had the following severe

3

impairments: coronary artery disease status post acute myocardial infarction, congestive heart failure, obesity, retinal detachment, degenerative disc disease of the lumbar spine, and depression (20 CFR 404.1520(c)).

4. Since December 23, 2020, the claim has not had an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, and 404.1526)

5. After careful consideration of the entire record, the undersigned finds that since December 23, 2020, the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except occasional climbing ramps and stairs and climbing ladders, ropes, or scaffolds; frequent balancing, and occasional stooping and crawling; with frequent kneeling and crouching; with limited far acuity; and should avoid concentrated exposure to hazards and pulmonary irritants; with occasional interaction with the public, co-workers and supervisors; and can adapt to occasional changes in the workplace.

6. Since December 23, 2020, the claimant has been unable to perform any past relevant work (20 CFR 404.1565).

7. Prior to the established disability onset date, the claimant was an individual closely approaching advanced age. On May 12, 2022, the claimant's age category changed to an individual of advanced age (20 CFR 404.1563).

8. The claimant has at least a high school education (20 CFR 404.1564).

9. Prior to May 12, 2022, transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled" whether or not the claimant has transferable job skills. Beginning on May 12, 2022, the claimant has not been able to transfer jobs skills to other occupations (SSR 82-41 and 20 CFR 404, subpart P, app. 2).

10. Prior to May 12, 2022, the date the claimant's age category changed, considering the claimant's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that the claimant could have performed (20 CFR 404.1569 and 404.1569(a)).

11. Beginning on May 12, 2022, the date the claimant's age

4

> category changed, considering the claimant's age, education, work experience, and residual functional capacity, there are no jobs that exist in significant numbers in the national economy that the claimant could perform (20 CFR 404.1560(c) and 404.1566).
>
> 12. The claimant was not disabled prior to May 12, 2022, but became disabled on that date and has continued to be disabled through the date of this decision (20 CFR 404.1520(g)).

[Tr. 19–28].

### III. STANDARD OF REVIEW

When reviewing the Commissioner's determination of whether an individual is disabled pursuant to 42 U.S.C. § 405(g), the Court is limited to determining whether the ALJ's decision was reached through application of the correct legal standards and in accordance with the procedure mandated by the regulations and rulings promulgated by the Commissioner, and whether the ALJ's findings are supported by substantial evidence. *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004). In reviewing the Commissioner's decision, the Court must consider the record as a whole. *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001).

Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Sec'y of Health & Hum. Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). It is immaterial whether the record may also possess substantial evidence to support a different conclusion from that reached by the ALJ, or whether the reviewing judge may have decided the case differently. *Crisp v. Sec'y of Health & Hum. Servs.*, 790 F.2d 450, 453 n.4 (6th Cir. 1986). The substantial evidence standard is intended to create a "'zone of choice' within which the Commissioner can act, without the fear of court interference." *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001) (quoting *Mullen*

5

*v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)). Additionally, the Supreme Court has explained that "'substantial evidence' is a 'term of art,'" and "whatever the meaning of 'substantial' in other settings, the threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). Rather, substantial evidence "means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). In determining whether an ALJ's findings are supported by substantial evidence, the Court does not try the case *de novo*, weigh the evidence, or make credibility determinations nor resolve conflicts in the evidence, nor decide questions of credibility. *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

In addition to considering whether the ALJ's decision is supported by substantial evidence, the Court must review whether the ALJ employed the correct legal criteria. It is grounds for reversal of a decision—even if supported by substantial evidence—where "the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2006).

On review, the plaintiff "bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y of Health & Hum. Servs.*, 46 F.3d 510, 512 (6th Cir. 1994). Furthermore, the Court is not under any obligation to scour the record for errors not identified by the claimant and arguments not raised and supported in more than a perfunctory manner may be deemed waived. *See McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997) (noting that conclusory claims of error without further argument or authority may be considered waived).

### IV. ANALYSIS

Plaintiff raises two issues on appeal: (1) the ALJ failed to consider the impact of severe fatigue when determining the RFC and (2) the ALJ erred by finding Plaintiff had at least a high

school education and basing all findings from the vocational expert upon testimony of the wrong educational level of Plaintiff [Doc. 14 p. 3]. Plaintiff asserts that the administration has failed to show there are jobs he can perform at the same age, education, and prior work experience [*Id.*]. The Commissioner responds that substantial evidence supports the ALJ's RFC finding, including his consideration of the opinion evidence, and that the ALJ properly relied on the vocational expert testimony in finding that Plaintiff's limitations did not preclude the performance of work existing in significant numbers in the national economy [Doc. 17 p. 4].

For the reasons explained below, the undersigned finds that the ALJ properly considered Plaintiff's allegation of fatigue in evaluating the record, along with the opinion evidence and the record as a whole in determining Plaintiff's RFC. The undersigned further finds that relying on the vocational expert testimony, which noted Plaintiff's correct educational level, the ALJ found Plaintiff's limitations did not preclude the performance of his work existing in significant numbers in the national economy.

### A. The ALJ's RFC Evaluation

Plaintiff asserts that "[t]he ALJ simply failed to consider that the severe fatigue was only associated with the cardiac issues, but the evidence shows otherwise," and argues that "[f]ailing to explain the decision or allude to any other significant cause of severe fatigue is an error" [Doc. 14 pp. 9–10]. Specifically, Plaintiff contends that he "also suffers from anemia, hyperlipidemia, hypertension, and depression, all of which his PCP reported as contributing to severe fatigue and all are objectively documented and assessed by his physicians" [*Id*. at 10]. Plaintiff further contends that "[t]he ALJ's rejection of [Dr. Blaine's] opinion is without merit and not supported by the exam" [*Id.*]. He submits that the ALJ ignored facts that were favorable to the claimant and

7

that the ALJ should have "consider[ed] the impact on the claimant unless [it is] found to be unfounded" [*Id.* at 11].

"A claimant seeking to establish disability from weakness or fatigue must introduce both objective evidence and subjective complaints." *West v. Comm'r of Soc. Sec. Admin.*, 240 F. App'x 692, 697 (6th Cir. 2007) (citations omitted). In evaluating subjective complaints, courts must

> examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

*Duncan v. Sec'y of Health & Human Servs.*, 801 F.2d 847, 853 (6th Cir. 1986); *see also* 20 C.F.R. § 404.1529(b) (1995). Here, the undersigned finds that the ALJ considered Plaintiff's subjective complaints of fatigue as well as opinion evidence, Plaintiff's medical treatment, and other objective medical evidence on the record, and ultimately found Plaintiff's complaints were not consistent with the objective findings.

Starting with Plaintiff's subjective complaints of fatigue, Plaintiff argues that the ALJ improperly considered his allegations [Doc. 14 pp. 9–11]. Subjective complaints are only one of many forms of evidence considered by the ALJ. *See* SSR 16-3p, 2017 WL 5180304, at *6 (Oct. 25, 2017) ("Other evidence that we will consider includes statements from the individual, medical sources, and any other sources that might have information about the individual's symptoms[.]" (citation omitted)). "When analyzing the claimant's subjective complaints of pain, the ALJ must also consider the following factors and how they relate to the medical and other evidence in the record: the claimant's daily activities; the location, duration, frequency and intensity of claimant's pain; the precipitating and aggravating factors; the type, dosage and effect

8

of medication; and the other treatment or measures to relieve pain." *Sparks v. Astrue*, No. 2:11-CV-00074, 2013 WL 1497849, at *9 (M.D. Tenn. Apr. 11, 2013) (citations omitted), *report and recommendation adopted sub nom. Sparks v. Colvin*, No. 2:11-CV-00074, 2013 WL 1910642 (M.D. Tenn. May 8, 2013) (citation omitted). The ALJ did so here.

The ALJ considered Plaintiff's testimony at the hearing, where he testified that he was no longer able to work due to cardiac issues, including cardiomyopathy, and stated that he suffered from severe fatigue and associated congestive heart failure symptoms and shortness of breath [Tr. 42–44]. Plaintiff also testified that he had back pain because of degenerative disease in the lumbar spine, with limitations in standing, walking, and lifting more than fifteen pounds [Tr. 45–46]. Plaintiff stated that he was prescribed several medications for depression from his primary care provider [Tr. 47–48].

Looking at the medical evidence in the record [Tr. 23–26], the ALJ found that in 2019, Plaintiff suffered from a myocardial infarction and noted the cardiology records stated Plaintiff continued to complain of fatigue, shortness of breath with exertion, and some chest pain [Tr. 22]. He noted the record indicated that Plaintiff's heart failure improved with treatment and that in 2020, subsequent testing showed normal functioning [*Id.*]. In 2021, cardiology records stated Plaintiff's mild fatigue was stable, and that from a cardiac standpoint, he was stable with recent cardiac testing within normal limits [Tr. 22–23].

The ALJ detailed Plaintiff's consultative physical treatment with Dr. Blaine, who opined that claimant could stand or walk for one hour and sit for eight hours in an eight-hour workday, and could lift and carry about fifteen pounds infrequently [Tr. 23]. During the exam, Dr. Blaine noted that Plaintiff got up from his chair and onto the exam table with mild difficulty [Tr. 23]. The exam revealed reduced range of motion, but that Plaintiff exhibited full muscle and

9

motor strength in the upper and lower extremities, and that his gait was a moderate limp favoring the left lower extremity, with a tandem walk showing moderate balance difficulty [*Id.*].

The ALJ additionally took into consideration the findings of Dr. McNeil, a state agency medical consultant who had reviewed the updated record, who found that Plaintiff could perform a light range of work [Tr. 77]. Dr. McNeil considered Plaintiff's fatigue in making his decision [Tr. 75, 77]. The ALJ found that Dr. McNeil's findings were persuasive, as they were consistent with the medical evidence as a whole and most supported by the objective findings, and considered Dr. McNeil's findings when coming to his decision [Tr. 26].

The ALJ further noted that Plaintiff had been prescribed psychotropic medications from his primary care providers, and that the records showed Plaintiff reported worsening fatigue due to depression but that he never received any formal counseling or other outpatient treatment [Tr. 24]. The ALJ noted that Plaintiff's "depression was aggravated by physical conditions and situational stressors such as lack of finances and health insurance, along with worsening fatigue" [Tr. 24]. Additionally, the ALJ took into consideration Plaintiff's depression and found that "[d]espite the lack of treatment, his mental status exams were within normal limits and there is no evidence of episodes of decompensation" [Tr. 25].

After considering the evidence, "the [ALJ found] that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms," but ultimately found that "claimant's statements about the intensity, persistence, and limiting effects of symptoms . . . [were] inconsistent because they [were] not entirely supported by objective clinical findings" [Tr. 24]. The ALJ stated the record showed that Plaintiff "suffers from coronary artery disease and cardiomyopathy, exacerbated by obesity, but these cardiac conditions appear stable with treatment and medication management" [*Id.*]. Concerning Plaintiff's subjective

complaints of fatigue, the ALJ found that "the evidence consistently demonstrated that there was no angina, orthopnea or dyspnea, edema, palpitations, or syncope" [*Id.*].

Plaintiff takes issue with the ALJ's consideration of Dr. Blaine's opinion. Considering the medical opinions and prior administrative medical findings, the ALJ did not find Dr. Blaine's consultative examination persuasive, finding "it is not supported by internal findings or consistent with the remainder of the medical evidence" [Tr. 26]. Particularly, the ALJ reasoned that "[t]he restriction to one hour standing and walking is not supported by the exam findings, which showed some reduced range of motion and subjective decreased sensation with note of limping . . . [with Plaintiff] exhibit[ing] good motor and muscle strength, along with normal cardiovascular and respiratory findings" [*Id.*]. The ALJ further noted that the radiologic imaging performed at the exam "was consistent with only mild DDD of the lumbar spine, which is not supportive of such severe functional restrictions" [*Id.*]. The ALJ stated that "the remainder of the medical records are consistent with stable and improved heart functioning with treatment, and stable and benign findings associated with DDD" [*Id.*]. Plaintiff contends that the ALJ relied "almost entirely on the mild DDD findings of an x-ray [and] ignored the actual physical findings of the exam which were more supportive of the limitations provided" [Doc. 14 pp. 10–11]. But the undersigned finds that the ALJ did consider the physical exam and found that Plaintiff still had showed "good motor and muscle strength, along with normal cardiovascular and respiratory findings" [Tr. 26].

In the end, Plaintiff asks the Court to reweigh the evidence considered by the ALJ with respect to his fatigue, which is not appropriate. *Ulman v. Comm'r of Soc. Sec.*, 693 F.3d 709, 713 (6th Cir. 2012) (finding that the substantial-evidence standard does not permit the court to independently weigh or resolve conflicts in the evidence). The undersigned finds that the ALJ considered proper factors and that substantial evidence supports the ALJ's finding that Plaintiff

11

Case 2:25-cv-00017-CEA-JEM    Document 19    Filed 01/28/26    Page 11 of 13
PageID #: 717

could perform light work with postural, environmental, and social limitations, and took into account Plaintiff's fatigue.

**B.     The Vocational Expert**

Plaintiff asserts that "[t]he ALJ was in error in his finding the claimant had at least a high school education and basing all findings from the vocational expert upon testimony based on the wrong educational level of the claimant" [Doc. 14 p. 11 (emphasis omitted)]. He argues that "[it] is not clear from the record/transcript whether the Vocational Expert was considering the claimant to have a high school education when asked the hypotheticals" [*Id.*]. As a result, Plaintiff contends that "the Administration, having the burden to prove there are jobs in the national economy that the claimant could perform, has failed to do so, as there was never a question posed to the VE about any jobs under a high school level of education" [*Id.*].

While the ALJ misstated Plaintiff's educational level in the decision as "[t]he claimant has at least a high school education" [Tr. 27], the vocational expert did not base her testimony on this level of education. At the hearing, the ALJ stated that it was indicated that Plaintiff has a "tenth grade education," and asked Plaintiff to confirm if that "sound[ed] right" [Tr. 41]. Plaintiff answered "[y]eah, it is either ninth or tenth. I can't remember" [*Id.*]. Subsequently, during the testimony of the vocational expert, the ALJ asked her to "assume an individual of [Plaintiff's] age and education" in determining whether there were any jobs that existed in the national economy that Plaintiff could perform [Tr. 53]. The vocational expert responded and said at the medium exertional level, there was hand packagers, some laundry workers, and bench helpers [Tr. 54–55]. At the light exertional level, the vocational expert stated that there were marking clerks, sorters, and mail clerks [Tr. 56]. Hence, because the vocational expert was posed a question about jobs

12

under a high school level of education, and responded in the affirmative, the ALJ properly concluded that Plaintiff was capable of other work.

## V. CONCLUSION

For the reasons set forth above, the undersigned **RECOMMENDS**[1] Plaintiff's Request for Reversal of the Decision of the Social Security Administration [**Doc. 14**] be **DENIED**, and the Commissioner's Motion for Summary Judgment [**Doc. 16**] be **GRANTED**.

Respectfully submitted:

_____
Jill E. McCook
United States Magistrate Judge

---

[1] Any objections to this Report and Recommendation must be served and filed within fourteen (14) days after service of a copy of this recommended disposition on the objecting party. Fed. R. Civ. P. 72(b)(2). Such objections must conform to the requirements of Federal Rule of Civil Procedure 72(b). Failure to file objections within the time specified waives the right to appeal the District Court's order. *Thomas v. Arn*, 474 U.S. 140, 153–54 (1985). "[T]he district court need not provide *de novo* review where objections [to the Report and Recommendation] are '[f]rivolous, conclusive or general.'" *Mira v. Marshall*, 806 F.2d 636, 637 (6th Cir. 1986) (quoting *Nettles v. Wainwright*, 677 F.2d 404, 410 n.8 (5th Cir. 1982)). Only specific objections are reserved for appellate review. *Smith v. Detroit Fed. of Tchrs.*, 829 F.2d 1370, 1373 (6th Cir. 1987).